STROBRIDGE v. LANDERS, FRARY & CLARK.

(Circuit Court, D. Connecticut.   November 10, 1881.)

1. PATENTS FOR INVENTION—FORMAL CHANGES.
    A change in structure, merely formal, does not avoid an infringement.
2. SAME—REISSUE—NEW INVENTION—GRINDING MILLS.
    Where the statement in the reissue is true, and is found in substance in the original, and no statement is made in the reissue of what the invention consists, but such statement in the original is omitted in the reissue, and no new matter

is introduced, yet, in view of the state of the art, if the inventor has produced a new and useful mill, differing substantially from any which preceded it, and evincing the exercise of inventive faculty, it is a new invention.

*Strobridge* v. *Lindsay,* 2 FED. REP. 695, followed.

3. SAME—COMBINATION OF PARTS.

In the construction of a grinding mill, where the hopper and grinding shell formed in a single piece, and suspended in the box by the upper part of the hopper or a flange thereon, did not exist before, combined in a mill, such combination produces a new invention.

*Blakewell & Kerr,* for plaintiff.

*B. F. Thurston* and *C. E. Mitchell,* for defendants.

BLATCHFORD, C. J. This suit is brought on reissued letters patent No. 7,583, granted to the plaintiff March 27, 1877; the original patent, No. 159,467, having been granted to him as inventor February 2, 1875, and reissued to him, No. 7,174, June 13, 1876. The drawings of the original and of No. 7,583 are the same. The following is the specification of No. 7,583, reading what is outside of brackets and what is inside of brackets, and omitting what is in italics:

"Figure 1 is a vertical section of a coffee-mill embodying my invention. Figure 2 is an under view of the cover, and figure 3 is a perspective view of the hopper. Like letters refer to like parts wherever they occur. My invention relates to the construction of coffee [and] *or* spice [mills in such manner that the hopper is enclosed in the box, and may be closed in turn by a sliding gate or cover, whereby a compact and neat mill is obtained.] *grinders; and it consists in suspending the hopper by means of the top of the box, and securing it in position by means of screws, which pass through the cover and through lugs, or a projecting flange upon the hopper, whereby a covered hopper is obtained, and the construction and attachment of the devices simplified; also, in providing the covered hopper with a sliding or movable gate, centered with the shank of the grinding nut, and sliding upon the periphery or flange of the hopper, whereby hinges, springs, or catches are dispensed with, and the gate slides aside, leaving an unobstructed opening for the admission of the article to be ground, and also in providing the hopper with projections or points which bite into the cover of the box and prevent the slipping or turning of the hopper, in connection with a cover projecting so as to rest upon the top of the box, and bind upon the upper edge of the hopper.* * * * A indicates the box with its drawer, B, of any suitable construction. The top, C, of the box is cut away, [so that] *for the admission of the* hopper [may be suspended therein] *which I introduce from above, suspending it* by means of a projecting flange or lugs on the [hopper.] *hopper, end to* [To] facilitate the suspension of the hopper, I preferably bevel the opening in top, C, to correspond with the curve of the hopper as shown at [c.] *c, which* [This] also will diminish the liability of the splitting of the wood when the screws which secure the cover are [introduced.] *introduced, (when a cover is used and secured, as shown,)* D represents the hopper or grinding shell, provided with a flange or

v.11,no.8—56

lugs, *d*, by which it is suspended [in] *upon the top, C, of* the box, [A. The hopper is fastened down, and also prevented from turning, by the screws, *g.*] *A, and through which pass the screws, g, which hold the hopper down and prevent it from turning.* The hopper has the usual grinding face, *d*, and a series of projections or points, *e*, which I provide for the purpose of taking hold upon the bevelled edge, *c*, of the top, C, to assist in preventing any movement of the hopper. These points, if sufficiently numerous, will of themselves prevent a change of position of the [hopper, so that screws may be omitted. This will be found the cheapest and most convenient way of suspending the] hopper, E, is the cover, having a central opening for the passage of the shank of the grinding nut, and a sunken or recessed rim for the accommodation of the lugs, *d*, or the flange of the hopper, so that the lower edge of the cover rests evenly upon the top, C, and at the same time binds upon the hopper. This cover, E, is provided with a sliding gate or door, F, which is pierced, as at *f*, for the passage of, or made to rest against, the shank of the grinding nut, upon which it turns or bears, said gate, F, resting, by its lower edge, upon the upper edge of the hopper, and sliding or moving within or without the cover, E, so as to be out of the way when the opening in the cover is unclosed. G represents the grinding nut, having a tapering shank, H, which passes through the cover, projecting portion of gate, F, and the crank, and is secured above by the usual tightening nut, I. The devices are put together as follows: The cover and gate are placed upon the hopper, the shank of the grinding nut passed through the hopper, cover, and crank, and secured by the tightening nut; the lugs or screw openings in the flange of the hopper are made to register with those in the cover, after which the operative parts are dropped into the opening in the top of the box, and screwed by a single set of screws which pass through the cover and lugs or flange of the hopper. The projecting points on the outside of the hopper will bite into the top of the box, and, as the cover binds upon the upper edge of the hopper, these will of themselves, if sufficiently numerous, be sufficient to prevent any movement of the hopper, so that, if desired, the screws need not pass through the flange of the hopper. The hopper may be suspended as shown, and the cover replaced by a bridge to support the shank of the grinding nut. The grinding shell or hopper and the cover may be secured by a separate set of screws. The lower part of the grinding shell may be formed with lugs or projections, to guide and steady the grinding nut. Among the advantages of my invention are the simplicity of construction, and the readiness with which the several parts and the box may be adjusted or set up, whereby time and labor are saved and a serviceable article produced."

Reading in the foregoing what is outside of brackets, including what is in italics, and omitting what is inside of brackets, gives the text of the original specification. There are eight claims in No 7,583. Only claim 1 is involved in this suit. It is as follows:

"(1) A coffee or similar mill, having a detachable hopper and grinding shell, formed in a single piece, and suspended within the box by the upper part of the hopper, or a flange thereon, substantially as and for the purpose specified."

The original patent had four claims, as follows:

"(1) The hopper and grinding shell, D, provided with points or projections, *e*, on its outer surface, in combination with cover, E, projecting so as to rest upon the top of the box and bind upon the upper edge of the hopper, substantially as and for the purpose specified. (2) In coffee or spice mills, the combination of box, A, having a top, C, with the hopper, D, suspended within the box by means of lugs or projections, which rest upon or take into top, C, and a cover, substantially as specified. (3) The combination of the hopper and grinding shell, D, grinding nut, G, having shank, H, and cover, E, having a sliding gate or door, F, substantially as and for the purpose specified. (4) The combination of cover, E, and grinding shell or hopper, D, the latter provided with lugs, or a flange, so that the two parts may be secured to the box by a single set of screws, substantially as specified."

So far as can be discerned in the drawings of the original and the reissue, the hopper and the grinding shell are represented as a single piece, without any indication of ever having been in two pieces. It is not stated in the reissue that they are cast in one piece. The text says that D is the hopper or grinding shell, and that it has the usual grinding face, *d'*. That grinding face is shown in the drawings as extending down from the lower part of the hopper part proper, and as having the grinding nut revolving within it. The grinding face is the inner face of the grinding shell. There is nothing else on the point till we come to claim 1, where it is said that the "hopper and grinding shell" are "formed in a single piece."

The elements which appear to be necessary in claim 1 are:

(1) A mill in the form of a box; (2) a hopper and grinding shell formed in a single piece; (3) the combined hopper and grinding shell detachable; (4) such hopper and grinding shell suspended in the box by the upper part of the hopper, or a flange thereon; (5) an arrangement of these features substantially as and for the purpose specified.

The defendant's structure, which is claimed to infringe claim 1 of the reissue, is constructed in accordance with the description and drawings of a patent granted to Rodolphus L. Webb, No. 204,865, June 11, 1878, so far as anything involved in this case is concerned. That patent shows a box mill with a cast-metal top projecting as a lateral flange horizontally from the top edge of the hopper on all four sides, and extending outwardly beyond the tops of the sides. The top is of one piece with the hopper proper, and the latter is of one piece with the grinding shell, as shown in the drawings; and this is the construction in the article put in evidence as infringing. The hopper and grinding shell are sunk in the box, so that there are covers which, when closed, rest on the upper face of the metal top. The patent states that the

grinding shell may be cast as a part of the hopper, or may be attached thereto. The patent claims merely an arrangement for adjusting the grinding nut up and down, so as to make it run nearer to or further from the grinding shell, and thus vary the quality of the grinding. This arrangement does not appear to be embodied in the mills produced and put in evidence as specimens of those made by the defendant. The defendant's article is a mill in the form of a box. It has a hopper and a grinding shell formed in a single piece, they being cast in one piece. The combined hopper and grinding shell and top are detachable from the box by unscrewing screws which go through the sides of the box into lugs depending on the inside of the box from the under side of the top. The hopper and the grinding shell, through their connection with the metal top, are suspended in the box. Every point of advantage resulting from the combination of the features in claim 1 of No. 7,583 exists in the defendant's article.

Some question is made as to what is meant by the word "detachable" in claim 1. It is not used in the descriptive part of the specification. But screws are shown and described which go through the lugs or flange on the hopper and into the wood of the box on top, and thus fasten the hopper to the box. Of course these are wood screws, and removable at will; and so the hopper and shell are detachable. The defendant's hopper and shell and top are detachable in the same way, being attached in the same way. The defendant urges that its structure does not infringe, because the hopper is not detachable from the top of the box. All that the defendant has done is to enlarge the size of the flange on the hopper. The sides of the box support the top of the box. When the flange is smaller than the top, it hangs in the top. When it is so large as to itself form a top and overlap the sides, the sides support the whole; that is, the flange top, the hopper, and the grinding shell. The change is merely formal, and does not avoid infringement. The flange on the hopper may be gradually enlarged, and the top of the box be gradually cut away, until the wood of the top is all gone, and the flange replaces it, without in any manner affecting the principle of the Strobridge inventions embodied in claim 1. This is all that the defendant has done. The answer sets up that the reissue is not for the same invention as that described in the original, and that the reissue contains new matter not found, suggested, or described in the original. This objection is not tenable. The statement in the reissue of that to which the invention relates is true, and is found, in substance, in the original. There is no statement in the reissue of what the inven-

tion consists in. The statement in the original as to what the invention consists in, is omitted in the reissue. It was narrower than the real invention. The drawings of the reissue and the original are the same. There is no new matter introduced into the reissue. The reissue truly describes the article and its parts. To say that the hopper is suspended in the box, when the original says that it is suspended from the top of the box, is not new matter, within the meaning of section 4916 of the Revised Statutes. The answer also sets up that in view of the previous state of the art, as shown in various patents set forth in the answer, the reissue shows no novelty, and discloses no patentable subject of invention, and that the reissue is invalid for want of patentable quality.

This reissued patent was adjudicated upon in the suit of *Strobridge* v. *Lindsay*, 2 Fed. Rep. 692, in the circuit court for the western district of Pennsylvania, by Judge Acheson. The defendant's mill in that case was of the same construction as the mill of the defendant in this case. The defences there insisted on were non-infringement and want of patentable invention. The mill was held to infringe claim 1 of the reissue. The question of the extension of the flange on the hopper was fully considered. Everything that is introduced into this case by the defendant on the question of novelty and patentability was in the *Lindsay Case*, except a mill called "Domestic Coffee-Mill." In this the hopper is elevated, and not sunk in the box. There is a cast-metal cover, covering the box and forming its top. The hopper is not of one piece with the cover, but rests on it, and is secured to it by rivets. The grinding shell is loose, and has a flange at its upper edge, and is dropped into a depression surrounding the central hole in the cover, and has the hopper above it. Lugs on it, fitting into corresponding recesses in the cover, prevent it from turning. The grinding shell is supported against lateral strain or displacement by the cover. This structure has not a hopper suspended in the box, nor a grinding shell and hopper formed in a single piece, and neither meets claim 1 nor shows the defendant's arrangement. The question of novelty and patentability was fully considered by Judge Acheson, especially in regard to the French mill, and the elevated hopper mill. Box coffee-mills existed, such as the elevated hopper mill, the Livingston & Adams mill, and the Brown mill, in which the hopper and the grinding shell were formed in one and the same piece; and box coffee-mills existed, such as the French mill, the Kurtz mill, and the Clark mill, in which the hopper was suspended in the box; and in the Domestic coffee-mill the metal top which carried the

hopper and the grinding shell was attached to the box by wood screws; but no coffee-mill existed combining all the features embodied in claim 1 of No. 7,583. It was, however, urged, in the *Lindsay Suit*, that it did not, in view of the prior structures, require invention to pass to a structure with the combined features of claim 1 of No. 7,583. Judge Acheson held that it did. The entire record in the *Lindsay Suit* is in evidence in this suit. There is nothing new in this suit as to the matters considered and passed upon in the other suit, in regard to patentability and novelty, and the Domestic coffee-mill presents no features in regard to forming the hopper and grinding shell in a single piece, and in regard to a hopper suspended in the box, which was not presented by structures among those which were before Judge Acheson. Under these circumstances, it would be proper, as it is usual, to follow the former decision on final hearing in another circuit court. But, irrespective of this, I entirely concur in the views of Judge Acheson.

It is strongly urged that claim 1 of No. 7,583 cannot be sustained, because the old devices aggregated in it do not, by their combination, produce a novel result which is the fruit of the combination. It is a sufficient answer to this view to say that a hopper and grinding shell formed in a single piece, and suspended in the box by the upper part of the hopper or a flange thereon, did not exist before, combined in a mill. The evidence shows that the suspension in the box requires, in order to dispense with the yoke or bridge which is below the grinding shell in the French mill, that the grinding shell and the hopper should be formed in a single piece, because when the hopper is sunken the grinding shell no longer has the lateral support of the box cover. Hence, the combination of those features do produce a novel result as the fruit of the combination. If that combination had existed before, the question whether adding to that the feature of detachability made another patentable combination might arise. But it does not arise now. The defendant, down to 1874, was not making a mill with a sunken hopper. In that year Webb, who was in its employ, having before him the French mill and a mill made by the Charles Parker Company in accordance with the Strobridge patent, entered into the manufacture of the infringing mill. It desired to make a mill with a sunken hopper which should be a cheaper mill than the French mill. It substantially copied the Charles Parker mill, merely extending the flange of the hopper. It formed the hopper and the grinding shell in one piece, and got rid of the lower supporting yoke of the French mill. In the Strobridge mill the only lateral support

of the grinding shell is the hopper. Therefore, there must be a strong, unyielding union between the grinding shell and the hopper. Where the hopper is elevated, the grinding shell is sustained laterally against the strain of grinding by the top of the box. The advantages thus resulting from Strobridge's arrangement have been availed of by the defendant by the use of what is covered by claim 1 of No. 7,583.

There must be a decree for the plaintiff for an account of profits and damages, and a perpetual injunction, with costs.